IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DONALD JAMES COTTERMAN,

    Plaintiff,

vs.                                                               Case No. 4:14cv642-MW/CAS

SHERIFF CHARLIE CREEL, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

    This case was initiated by Plaintiff, proceeding pro se, on December 2, 2014. Doc. 1. Subsequently, Plaintiff's Fifth Amended Complaint[1] was filed on May 7, 2015, doc. 38, and Defendants from the Wakulla County Sheriff's Office (Sheriff Creel, Deputy Morrison, Major Miller, Captain Martin, and Deputy Carroll) filed a Motion to Dismiss on May 19, 2015. Doc. 39. That motion sought dismissal on the basis that Plaintiff did not exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). *Id.* Because Plaintiff argued in opposition to the motion that he had "filed [six] different grievances seeking relief" and never received a response back, an evidentiary hearing was held on August 4, 2015, to consider the issue of exhaustion and resolve disputed facts. Doc.

---

[1] The complaint alleges five separate counts, but all events took place in August and September of 2014. Doc. 38.

68. On the day after the hearing, the parties were directed to supplement the record. Doc. 69.  Specifically, the Court raised the issue *sua sponte* as to whether the Wakulla County Jail had an established grievance process in place prior to the relevant events alleged in the complaint.  *Id.*  The parties have responded, docs. 74 and 76, and the motion to dismiss may now be decided.

**The Motion to Dismiss, doc. 39**

The Wakulla County Jail Defendants (Sheriff Creel, Deputy Morrison, Major Miller, Captain Martin, and Deputy Carroll) argued in the Motion to Dismiss filed on May 19, 2015, that Plaintiff had "not submitted any grievances concerning any of the issues raised in the current Complaint in this case." *Id.* at 2.  Defendants claimed Plaintiff submitted only "informal 'inmate requests' concerning the matters raised in this Complaint." *Id.*  Defendants contend Plaintiff "never filed a written grievance over any of the matters raised/alleged in his Complaint." *Id.* at 7.

In support of that argument, Defendants presented the affidavit of Defendant Captain Jackie Martin who advised that grievances are logged into a grievance log which Defendant Martin maintains.  Doc. 39-1 (Ex. A). After logging in grievances, Defendant Martin retains "copies of all such grievances, and the responses given to inmates." *Id.*  Defendant Martin declared that Plaintiff "only submitted grievances concerning medical procedures and an earlier tasing incident." *Id.*

Defendants' motion to dismiss asserts that the Jail has "a three-step grievance procedure."  Doc. 39 at 7.  An inmate must file an informal grievance and if not satisfactorily resolved, he must file a formal written grievance within seven days of the incident. *Id.*  It still unsatisfied, the inmate may appeal to the Detention Facility

Administrator who will provide a "final" decision within five working days. *Id.* Defendants provided excerpts from the Inmate Handbook as exhibit 2 which set forth the grievance procedure. Doc. 39-2.

**Plaintiff's response, doc. 41**

In response to the motion, Plaintiff claimed he had filed six different grievances but never received a response to those grievances. Doc. 41 at 2. Plaintiff says he filed other grievances which were answered because they concerned medical issues and not the events which are the subject of this case (the violation of Plaintiff's constitutional rights). Plaintiff then pointed to copies of grievances he previously submitted in this case (doc. 11) to show that he attempted to grieve these issues. Doc. 41. However, he argues that for the issues raised in this case, "not ONE was ever answered or returned to Plaintiff . . . ." *Id.* at 2.

**The evidentiary hearing**

Because the record was contradictory, an evidentiary hearing was held to decide whether or not Plaintiff submitted grievances concerning any of the issues raised in the fifth amended complaint. Doc. 45. In particular, the Order which directed the hearing noted that Plaintiff had indeed submitted copies of his purported grievances, but it was "unclear how Plaintiff has such copies in light of his assertion that his grievances were never responded to or returned to him." *Id.* at 5 (citing doc. 41).

The evidentiary hearing was held on August 4, 2015. Doc. 68. Defendants admitted into evidence an excerpt from the Jail's Rules which outlined the purported grievance procedures. Doc. 65, Ex. 2 (doc. 65 at 10-13). Although the motion to dismiss asserted the Jail's grievance process was detailed in the Inmate Handbook, the

document is actually titled the "Detention Facility Inmate Rules & Regulations."  Doc. 39 at 2.  The same excerpt from the "Rules & Regulations" which was presented with the motion to dismiss, doc. 39, exhibit 2, was presented at the hearing, doc. 65 at 10-13 (exhibit 2).  Defendants also admitted into evidence a copy of the Jail's "Standard Operating Procedure [hereinafter [SOP]."  Doc. 65 at 30-33 (doc. 65, Ex. 9).  The SOP applies "to all Detention Facility Personnel" and directs that inmates and detainees at the Jail "shall have access to a grievance procedure through which problems may be expressed and resolved."  Doc. 65 at 32.

Plaintiff pointed out during the hearing that the revision dates listed on the bottom of the first page of the "Rules & Regulations" was March 31, 2015.  *See* doc. 65 at 10.  The revision date for the SOP was May 20, 2015.  Doc. 65 at 30.  Those dates are problematic because they are *after* the events alleged in the complaint,[2] doc. 38, and after case initiation on December 2, 2014.  Doc. 1.

A complete review of this case was undertaken to determine the rules in effect for inmate grievances at the time of the events alleged.  In support of Plaintiff's first amended complaint, doc. 7, Plaintiff filed a memorandum of law.  Doc. 9.  Attached to that memorandum was a copy of the "Rules & Regulations" which contained a revision date of May 16, 2011.  Doc. 9-1 at 3-25 (Exhibit P-1).  That version of the Rules,

---

[2] Plaintiff's complaint alleged that he lost rights and privileges when he was placed into segregation on August 28, 2014, doc. 38 at 6, he was denied proper medical treatment on August 29, 2014, *id.* at 11-12, not provided an "indigent kit" on September 23, 2014, *id.* at 12, and forced to sit in an unsanitary cell for hours on September 28, 2014, *id.* at 13.

Case No. 4:14cv642-MW/CAS

preceding the events at issue, did not contain a provision explaining a grievance process at the Jail. *See* doc. 9-1 at 3-24.[3]

Approximately one month later Plaintiff filed another set of exhibits, doc. 11, in support of his memorandum of law. Exhibit P-1 from those exhibits is another copy of the "Inmate Rules & Regulations," this time with a revision date of September 25, 2014. Doc. 11 at 3-28; *see* page 5. That time frame overlaps the relevant dates of the complaint. This version of the Rules, likewise, does not contain a provision which explains a grievance process. *See* doc. 11 at 5-25.

Following the evidentiary hearing, an Order was entered on August 5, 2015, noting that the documentary evidence presented thus far did not reveal that the "Inmate Rules & Regulations" which were in existence at the time of the relevant events directed or explained a grievance process. Doc. 69 at 3. The parties were given "an opportunity to supplement the record and provide the relevant rules, procedures, Inmate Handbook, or other directives which set forth the grievance process to inmates at the Wakulla Detention Facility in August and September of 2014." *Id.* at 4.

**The Supplements**

Defendants filed a copy of the Standard Operation Procedure (SOP) 10.01 (Inmate/Detainee Rights) which was in effect in late 2014." Doc. 74 at 1; *see* exhibit 1 (doc. 74-1 at 1-4). SOP 10.01 indicates it rescinds an earlier SOP from November 15, 2006. Doc. 74-1 at 1. The effective date listed on that SOP is not entirely clear. On the

---

[3] In reviewing those exhibits on the Court's Electronic Case Filing System, it was noticed that the exhibit contained only odd numbered pages of the "Inmate Rules & Regulations." Doc. 9-1. The paper copy of the exhibit as submitted by Plaintiff was double sided and included all pages of the Rules. Thus, the Clerk's Office was directed to re-scan the exhibit in its entirety.

Case No. 4:14cv642-MW/CAS

top of the page is the obviously erroneous date of "May 1, 1013." *Id.* At the bottom of each page is the notation: "Rev. 2013-03-13." *Id.* at 1-4. Thus, it is unclear whether the correct month should be March or May, and whether the correct date is the 1st or 13th of the month. *Id.* at 1. Nevertheless, it is accepted that SOP 10.01 was implemented in 2013, prior to the events at issue, and explain to "all Detention Facility Personnel" the procedures for safeguarding the rights of inmates and detainees. *Id.* Included in those procedures is a section which generally explains the grievance process as permitting an inmate to file a written grievance and then an appeal, a two-step process. *Id.* at 3.

Defendants also submitted two copies of the "Inmate Rules and Regulations (a/k/a Inmate Handbook)." Doc. 74, exhibits 2 and 3. Exhibit 2 has a revision date of May 16, 2011, doc. 74-2 at 1, and is the same version of the Rules previously submitted by Plaintiff. *See* doc. 9-1 at 3-25 (Exhibit P-1). Exhibit 3 has a revision date of September 25, 2014. Doc. 74-3 at 1. That is also the same version of the "Inmate Rules & Regulations" previously submitted by Plaintiff. Doc. 11, Ex. P-1 at 5. There is no provision concerning the grievance process in either version of those Rules.

Plaintiff responded to the August 5th Order, doc. 69, by arguing that Defendants are "adjusting dates" to fit their needs. Doc. 76. Plaintiff points out that none of the inmate rule books which he possesses have the grievance procedure in them. *Id.* Plaintiff argues that he "filed grievances with no responses, even though the Wakulla County Jail Inmates Rules and Regulations Handbook did not make available the procedures before filing a § 1983 lawsuit." *Id.* at 2. Plaintiff now asserts in his response that no procedure was available during the relevant time period of his complaint and he requests that the motion to dismiss be denied and this case permitted to proceed. *Id.*

**Analysis**

The Supreme Court has held that under a provision of the Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(e), prisoners must properly exhaust available administrative remedies before initiating a § 1983 action.  Woodford v. Ngo, 548 U.S. 81, 84, 126 S. Ct. 2378, 2382, 165 L. Ed. 2d 368 (2006) (holding "that proper[4] exhaustion of administrative remedies is necessary."); *see also* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (holding that prisoners must file grievances within the time required by the prison's administrative rules); Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) (concluding that "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.").  The Supreme Court held in a unanimous opinion that although exhaustion is mandated by § 1997e(a), it is not a pleading requirement imposed on prisoners but, rather, an affirmative defense.  Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007).

Defendants have the burden of proving the affirmative defense that Plaintiff "failed to exhaust his available administrative remedies."  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (relying on Jones, 127 S.Ct. at 910, 921; *see also* Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given

---

[4] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford, 548 U.S. at 90-91, 126 S. Ct. at 2386.

Case No. 4:14cv642-MW/CAS

to the same party); <u>Roberts v. Barreras</u>, 484 F.3d 1236, 1240 (10th Cir. 2007) ("<u>Jones</u> does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to <u>Jones</u> have all put the burden of proof on defendants, to the extent that they addressed the issue."). Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1376 (11th Cir. 2008). The parties have been provided fair notice and sufficient opportunity to develop this record. *See* docs. 40, 45, 50, 59, and 69.

An inquiry into proper exhaustion must consider the language of the rules to determine what is required. The first step, necessarily then, is to determine whether a grievance system is in place and what it requires.

While the Wakulla County Jail Defendants have not provided evidence that clear "Rules & Regulations" were published to inmates prior to the events at issue in this case, it must be concluded on this record that administrative remedies were in existence and available. At the beginning of the hearing, the parties stated their agreement as to the "threshold issue" that there was a three-step process in place and a requirement to exhaust administrative remedies. Additionally, Correctional Officer Assistant Averill testified at the evidentiary hearing that the Jail has had a grievance process for the twelve years she has worked at the Jail. In 2013, the Jail revised SOP 10.01 which provided guidance to Jail staff on the inmate grievance process. Doc. 74-1. Thus, despite the fact that the Inmate Handbook did not explain to inmates or detainees the grievance process prior to March 31, 2015, there is sufficient evidence to conclude that

Plaintiff was aware of the grievance process[5] during 2014 (the relevant time period), and that administrative remedies were "available" to inmates and detainees at the Jail.

If this were a case in which it was challenged that Plaintiff did not properly exhaust administrative remedies, it would be crucial to determine what rules were in place and how inmates were informed of the grievance process available to them.  In that situation, providing an SOP that governs staff conduct only and does not demonstrate notice to inmates would be insufficient.  Furthermore, it would be questionable on this record whether there is a two-step process or a three-step process.  But this is not such a case.  Defendants motion to dismiss argued that Plaintiff did not submit "any grievances concerning any of the issues raised" in the complaint. Doc. 39 at 2.  The clear import of Defendants' position at the evidentiary hearing was that there was "a dramatic increase of grievances" filed by Plaintiff after May 19, 2015, and a dramatic increase in the number of copies made for Plaintiff.[6]  The suggestion being that Plaintiff has manufactured fake grievances after receipt of Defendants' motion to dismiss, doc. 39, which was filed on May 29, 2015.

Ms. Averill testified that grievances and inmate request forms are turned in to her.  She separates the grievances from the request forms and delivers the grievances to the captain.  She testified that she does not read the grievances.  She separates the

---

[5] The "Inmate Grievance Form" does not contain a revision or effective date.  *See* doc. 65 at14 (Ex. 3).

[6] Testimony in support of finding an increase in grievances and in copying grievances came from witnesses Averill (a correctional officer assistant), Deputy Roberts,

inmate request forms and delivers them to the proper responding authority such as the shift lieutenant or sergeant, the medical department, the mail room, and the like.[7]  She confirmed that Plaintiff had submitted multiple grievances, but she was unaware of the content of those grievances because she does not read them.  On cross examination, Plaintiff asked Ms. Averill whether she would know if he submitted a grievance about not having a prior grievance answered.  She indicated she would not be aware of that because she does not read the grievances.

Deputy Roberts testified that it would be easy for an inmate to fake grievances.  He explained that an inmate could request a grievance form, write out a grievance, turn it in to a deputy to make a copy, but then never submit the original grievance.  Deputy Roberts also said that he has made copies for Plaintiff and since May 19, 2015, there had been "a dramatic increase" in the number of copies Plaintiff has requested be made for him.

Defendant Martin, the assistant jail director, also testified at the hearing.  He testified that he keeps a grievance log for every grievance received and assigns a serial number to the grievance.  The log also notes the subject of the grievance.  *See* doc. 65 at 15 (Ex. 4).  Defendant Martin testified as to two grievances listed on the log, both of which concerned issues not raised in this case.  One grievance was submitted in October 2014 and one was in January 2015.  On cross examination, Defendant Martin acknowledged that Plaintiff had filed many grievances, although those questions

---

[7] The Rules & Regulations direct that formal written grievances are submitted to the Assistant Facility Administrator.  Doc. 39-2 at 3 (Ex. 2).  That official forwards the grievance "to the appropriate department head for processing" and a written response is to be provided to the inmate.  If not satisfied with the response, the inmate may submit an appeal to the Detention Facility Administrator.  *Id.* at 4.

pertained to Plaintiff's Exhibit F, doc. 64-1.  Review of that exhibit reveals Plaintiff submitted numerous "Inmate Request" forms and letters to Defendant Martin, not grievances.  Doc. 64-1 at 79-101, 111.  Plaintiff questioned Defendant Martin about six grievances which concern the events alleged in this case, but Defendant Martin testified that he had "never seen" those grievances prior to the evidentiary hearing.  Finally, Defendant Martin also testified that it was easy to "fake" a grievance that was never turned in.

Plaintiff called Christian Payne as a witness at the hearing.  Mr. Payne was also confined with Plaintiff at the Jail.  He testified that he was with Plaintiff in H-cell and saw Plaintiff file many grievances.  He said that Plaintiff had a stack of 15 or 20 grievances that were not answered.  He testified that Plaintiff always got copies of his legal work, and explained that inmates could not make their own copies but must give documents to a deputy to make copies.

Plaintiff also called Charles Anthony Cannon as a witness. Mr. Cannon shared a confinement cell with Plaintiff during the time when their cell flooded.  Mr. Cannon testified that Plaintiff wrote a grievance about that situation and about not receiving an indigent kit.  He said that Plaintiff turned in the grievance after getting a copy made.  He also acknowledged that the only way to get copies made is to give them to deputies who make copies for the inmates.

Plaintiff also testified at the hearing that he wrote six grievances pertaining to the issues raised in his complaint.  Plaintiff said that his Exhibit B contains the six unanswered grievances.  *See* doc. 64-1 at 12-36.  Plaintiff said he had copies made of

all the grievances. Furthermore, Plaintiff said that it does not matter whether an "original" grievance is turned in or a photocopy of the grievance, so he sometimes would turn in an original and sometimes turn in a copy.

In light of Defendants' argument that it would be easy to manufacture grievances and that Plaintiff's copying requests increased dramatically afer the filing of the motion to dismiss, all prior grievances which were submitted in this case have been reviewed. Plaintiff stated at the hearing that he submitted exhibits to this Court in "late 2014, early 2015," and he contends they prove he exhausted administrative remedies and that he did so prior to Defendants' filing of the motion to dismiss. Plaintiff's exhibits were filed with this Court on January 8, 2015, four months *prior* to the filing of the motion to dismiss. Doc. 11. Those exhibits have been reviewed to determine if Plaintiff exhausted each of the five claims raised in this case.

Count one of the complaint alleges that deputies conspired with the judge to punish Plaintiff and deprive him of his rights. Doc. 38 at 6-9. Plaintiff submitted a copy of a grievance dated August 30, 2014, in which he questioned why he had been placed in confinement, had all his privileges taken away, and had his constitutional rights violated. Doc. 11 at 117 (Exhibit P-15); *see also* doc. 64-1 at 27 (Plaintiff's Exhibit B from the evidentiary hearing). The grievance is unanswered and contains a notation on the form stating "no response." *Id.* Plaintiff also submitted a similar grievance dated September 15, 2014, in which Plaintiff said he had not received disciplinary reports that would justify having his rights violated with no mail, no t.v., no recreation, no visits, no phone, no commissary, no church, no hygiene items, etc. Doc. 11 at 121; *see also* doc. 64-1 at 28. That grievance is, likewise, unanswered.

Count two alleges a conspiracy to take property and legal materials and provide copies of such materials to prosecutor Miller. Doc. 38 at 10-11. Plaintiff submitted a grievance dated September 11, 2014, in which he questioned why his legal work was taken and why were copies were made. Doc. 11 at 119 (Exhibit P-15); *see also* doc. 64-1 at 25. That grievance is also unanswered and contains a notation on the form stating "no response."

Count three alleges that after Plaintiff had seizure on August 29, 2014, and fell, Defendant Carroll prevented him from receiving medical care. Doc. 38 at 11-12. Plaintiff submitted a copy of a Grievance dated August 30, 2014, in which he complained that Deputy Carroll interfered with the nurse giving him medical care after he fell and split his head open. Doc. 11 at 115 (Exhibit P-15); *see also* doc. 64-1 at 26. That grievance is unanswered and also has the notation "no response."

Count four alleges retaliation by Defendant Carroll on September 23, 2014, when he did not provide Plaintiff with an indigent kit. Doc. 38 at 12. Plaintiff submitted a copy of a grievance dated September 23, 2014, which complained that Defendant Carroll did not give Plaintiff an indigent kit. Doc. 11 at 123 (Exhibit P-15); *see also* doc. 64-1 at 23. Plaintiff also asked if anyone was "going to answer any of" his grievances. *Id.* Plaintiff suggested that no responses would be provided "cause you know I'm filing a civil suit." *Id.* The grievance is unanswered and includes the "no response" notation on the form.

Count five alleges that after the toilet flooded in Plaintiff's cell on September 28, 2014, he and his cell mate had to remain in a contaminated cell because Defendant Carroll did not provide them with cleaning supplies. Doc. 38 at 12-13. Plaintiff filed a grievance which is dated either September 28, 2014, or September 29, 2014, in which

he complains that Deputy Carroll made him and inmate Cannon sit in a cell with feces and urine for hours. Doc. 11 at 125; *see also* doc. 64-1 at 24. Plaintiff again said, "can you answer my grievances. I need them for my civil suit." *Id.* The grievance is unanswered and contains the notation "no response."

Plaintiff's exhibit P-15, doc. 11, was submitted in January 2015, four months before Defendants filed the motion to dismiss, doc. 39 in May 2015. That exhibit contains copies of grievances concerning all five claims raised in this case. Thus, Defendants' argument must be rejected that Plaintiff manufactured grievances after receipt of the motion to dismiss in May 2015. It is true that the grievance process as it currently exists at the Jail could be easily manipulated. However, Defendants have not met their burden of showing that Plaintiff manufactured grievances after being notified that Defendants were asserting the affirmative defense of exhaustion because grievances were submitted in this case prior the defense being raised. The absence of published rules at the time of the events in question leave open the issue of what an inmate is required to do if the initial written grievance is unanswered. It could be that he is still required to proceed to the next step of the process, or it could mean that grievance is complete. There is also no meaningful distinction in the fact that Plaintiff submitted some "original" grievances and some photocopies because there is no clear rule dictating one or the other. Although there are credibility issues in this case, it is clear that Plaintiff did not manufacture grievances after receipt of the motion to dismiss. Plaintiff submitted copies of unanswered grievances well in advance of the motion to dismiss. The argument that Plaintiff did not exhaust administrative remedies should be rejected and the motion to dismiss, doc. 39, denied.

It is respectfully **RECOMMENDED** that the motion to dismiss, doc. 39, filed by the Wakulla County Jail Defendants be **DENIED,** that Defendants be required to submit a response to Plaintiff's fifth amended complaint, doc. 38, and this case be remanded for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 6, 2015.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**