**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**DONALD JAMES COTTERMAN,**

      **Plaintiff,**

**vs.**                                  **Case No. 4:14cv642-MW/CAS**

**SHERIFF CHARLIE CREEL, et al.,**

      **Defendants.**

_____/


## AMENDED SECOND REPORT AND RECOMMENDATION[1]

      This case was initiated by Plaintiff Donald James Cotterman, proceeding pro se, on December 2, 2014. Doc. 1. Subsequently, Mr. Cotterman's Fifth Amended Complaint[2] was filed on May 7, 2015, doc. 38, and Defendants from the Wakulla County Sheriff's Office (Sheriff Creel, Deputy Morrison, Major Miller, Captain Martin, and Deputy Carroll) filed a Motion to Dismiss on May 19, 2015. Doc. 39. That motion is addressed in a separate Report and Recommendation. Defendant Brian Miller filed a motion to dismiss on July 22, 2015. Doc. 60. Mr. Cotterman was directed to respond to that motion, doc. 67, and his response, doc. 75, was timely filed.

_____

      [1] The Report and Recommendation entered on October 9, 2015, is amended as to the final paragraph on page 27 only, stating that the motion to dismiss the free speech claim should be denied, but the motion otherwise granted.

      [2] The complaint alleges five separate counts, but only count two of the complaint is asserted against Defendant Brian Miller. Doc. 38 at 10-11.

**The Complaint, doc. 38**

Mr. Cotterman alleges that on September 11, 2014, Mr. Miller conspired with four

other Defendants (Sheriff Creel, Deputy Morrison, Major Miller and Captain Martin) at

the Wakulla County Jail by having them go to Mr. Cotterman's confinement cell and

take all his "legal material," all mail, and writing paper, and "go through it, make copies

and give the copies to Prosecutor Miller."  Doc. 38 at 10.  Mr. Cotterman said that

Mr. Miller ordered all of his property be placed in storage.  *Id.*  He claims that his

property was taken without a warrant and confidential legal material was viewed outside

his presence.  *Id.*  On September 15, 2014, Mr. Cotterman informed the judge of those

actions.  *Id.*  He reports that Mr. Miller "admitted to it" and the judge "ordered Mr. Miller

to return all [his] property."  *Id.*  Mr. Cotterman contends that his First, Fifth, Eighth, and

Fourteenth Amendment rights were violated by Mr. Miller's actions.  *Id.* at 11.  The relief

requested in this lawsuit is one million dollars in punitive damages, one million dollars in

compensatory damages for "mental anguish," and injunctive relief including a letter of

apology, and "anything else this court deems just . . . ."  *Id.* at 14.

**The Motion to Dismiss, doc. 60**

Mr. Miller is a state prosecutor and was assigned to prosecute a case against Mr.

Cotterman.[3]  Mr. Miller raises Eleventh Amendment immunity, doc. 60 at 1-2, as a

defense and also asserts "absolute prosecutorial immunity," *id.* at 2, and "qualified

immunity."  *Id.* at 3.  Mr. Miller also argues that the complaint fails to state a claim upon

---

[3] The "case was declared a mistrial."  Doc. 60 at 4.

Case No. 4:14cv642-MW/CAS

which relief may be granted because the complaint does not describe "any injury flowing from the alleged constitutional violations." *Id.* at 3-4. In addition, Mr. Miller contends that Mr. Cotterman has no protected Fourth Amendment right. *Id.* at 4-5.

**Plaintiff's Response, doc. 75**

Mr. Cotterman contends that because Mr. Miller acted in bad faith in taking all his legal material, he "does not qualify for immunity." *Id.* at 1. Mr. Cotterman further asserts that Mr. Miller is "not immune from prospective injuntive [sic] relief." *Id.* at 2. Moreover, he contends that Mr. Miller's actions were "outside the court room" and was an unreasonable search and seizure. *Id.* at 3-4. Mr. Cotterman argues that "guards have a right to search detainee's cells but not at the request of the prosecutor and never to make illegal copies of Plaintiff's confidential mail." *Id.* at 2. He points out that guards are still not permitted to "read legal mail" and must "open all legal mail in the presence of the inmate . . . ." *Id.* Mr. Cotterman said that "guards showed up, removed Plaintiff from his cell and hen Plaintiff was returned 'all' his property was gone, right in the middle of Plaintiff's trial." *Id.* He asserts that his complaint is sufficient to state a claim and the motion to dismiss should be denied. *Id.* at 3-5.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30

---

[4] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

L.Ed.2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 550 U.S. at 558).  The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949.  A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678, 129 S.Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "  Id. (quoting Twombly,  550 U.S. at 555).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

**Analysis**

**a.    Eleventh Amendment Immunity**

Mr. Cotterman did not state whether he was suing any of the named Defendants in their official or individual capacities.  Doc. 38.  Mr. Miller's motion to dismiss assumes that he is sued in both his official and individual capacities.  Mr. Cotterman offers little clarification on that issue in his response.  See doc. 75 at 2, 4.

In Young Apartments, Inc. v. Town of Jupiter, Florida, 529 F.3d 1027, 1046–48 (11th Cir. 2008), the Court explained that '[w]hen it is not clear in which capacity the

defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed."  Young Apartments, 529 F.3d at 1047 (quoting Jackson v. Georgia Dep't of Trans., 16 F.3d 1573, 1575 (11th Cir. 1994)).  A defendant should receive sufficient notice of the capacity in which he is sued and, in general, a plaintiff has "a duty to 'make plain who they are suing and to do so well before trial.' "  Colvin v. McDougall, 62 F.3d 1316, 1318 (11th Cir. 1995) (quoted in Young Apartments, 529 F.3d at 1047).  "However, plaintiffs are not required to designate with specific words in the pleadings that they are bringing a claim against defendants in their individual or official capacities, or both."  529 F.3d at 1047 (citing Hobbs v. Roberts, 999 F.2d 1526, 1529-30 (11th Cir. 1993)).  "Thus, while it is 'clearly preferable' that a plaintiff state explicitly in what capacity defendants are being sued, 'failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.'"  Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001) (quoted in Young Apartments, 529 F.3d at 1047); *see also* Harris v. Ostrout, 65 F.3d 912, 915 (11th Cir. 1995)(noting that a pro se complaint is construed "more liberally than ... the complaint of a represented party").

Here, the complaint seeks compensatory damages and punitive damages from each Defendant.  "In a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities."  Adams v. Franklin, 111 F. Supp. 2d 1255, 1262 (M.D. Ala. 2000) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 26-70, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *see also* Wynn v. Southward, 251 F.3d 588, 592 (7th Cir. 2001) (observing that plaintiff's

"request for punitive damages suggests an intent to sue the officers in their individual capacities").  Additionally, a claim for compensatory monetary damages is also barred by the Eleventh Amendment.[5]  Board of Trs. of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 962 (2001) (citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73, 120 S.Ct. 631, 145 l.Ed.2d 522 (2000)).

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *see also* Summit Med. Assoc., P.C. v. Pryor, 180 F .3d 1326, 1336 (11th Cir. 1999) (concluding that "if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit.").  Mr. Cotterman's claims cannot proceed against Mr. Miller in his official capacity for monetary damages under § 1983.[6]

---

[5] The Eleventh Amendment states: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. Amend. XI.  It is well established that the Eleventh Amendment also applies to suits by citizens against their own States.  *See* Garrett, 531 U.S. at 363, 121 S.Ct. at 961.

[6] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  Will, 491 U.S. at 71, n.10, 109 S.Ct. at 2312 (quoting Kentucky v. Graham, 473 U.S. 159, 167, n.14, 105 S.Ct. 3099, 3106, n.14 87 L.Ed.2d 114 (1985); Ex parte Young, 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908)).

In Edelman v. Jordan, 415 U.S. 651, 666-67, 94 S.Ct. 1347, 1357-58, 39 L.Ed.2d 662 (1974), the Supreme Court held that the Eleventh Amendment also bars retroactive injunctive relief against state officials for violation of federal law. However, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-03, 104 S. Ct. 900, 909, 79 L. Ed. 2d 67 (1984) (explaining Edelman and noting that under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908), an allegation that a state officer is violating federal law strips the officer of his official authority). Nevertheless, retroactive injunctive relief is not barred by the Eleventh Amendment. It is presumed that Mr. Cotterman intended to sue Mr. Miller in both his official and individual capacity. However, the official capacity claim must be limited to injunctive relief only and the motion to dismiss should be granted in part on this issue.

**b.    Prosecutorial Immunity**

Mr. Miller contends he has "absolute prosecutorial immunity" because his actions were taken "in fulfillment of his duties as an advocate for the State." Doc. 60 at 2. This argument is only relevant to a request for monetary damages because "prosecutors are not immune from claims for injunctive relief . . . ." Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (citing Tarter v. Hury, 646 F.2d 1010, 1012 (5th Cir. 1981)).

In <u>Imbler v. Pachtman</u>, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the

Court "held that prosecutors are absolutely immune[7] from liability under § 1983 for their

conduct in 'initiating a prosecution and in presenting the State's case,' . . . insofar as

that conduct is 'intimately associated with the judicial phase of the criminal process.'"

<u>Burns v. Reed</u>, 500 U.S. 478, 484, 111 S. Ct. 1934, 1938, 114 L. Ed. 2d 547 (1991)

(explaining <u>Imbler</u>, 424 U.S. at 430-31, 96 S.Ct. at 995).  Thus, resolving prosecutorial

immunity issues demands an inquiry focused on "the functional nature of the activities

rather than (the prosecutor's) status."  <u>Imbler</u>, 424 U.S. at 430, 96 S.Ct. at 995 (quoted

in <u>Marrero v. City of Hialeah</u>, 625 F.2d 499, 504 (5th Cir. 1980)).  Put simply,

prosecutorial immunity protects the office, not the person.  <u>Kalina v. Fletcher</u>, 522 U.S.

118, 125, 118 S. Ct. 502, 507, 139 L. Ed. 2d 471 (1997) (stating "it is the interest in

protecting the proper functioning of the office, rather than the interest in protecting its

occupant, that is of primary importance.").  "[T]he official seeking absolute immunity

bears the burden of showing that such immunity is justified for the function in question."

<u>Burns</u>, 500 U.S. at 486, 111 S. Ct. 1939.

When examining witnesses and participating in a hearing, the prosecutor is

protected by absolute immunity.  500 U.S. at 487-491, 111 S. Ct. at 1940-42.  A

distinction must be made between the prosecutor's "role as advocate for the State" as

opposed to "his role as 'administrator or investigative officer.'"  <u>Imbler</u>, 424 U.S. at

---

[7] Immunity is based on two interests: "protecting the prosecutor from harassing litigation that would divert his time and attention from his official duties and the interest in enabling him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" <u>Imbler</u>, 424 at 424, 96 S.Ct. at 992 (quoted in <u>Kalina v. Fletcher</u>, 522 U.S. 118, 125, 118 S. Ct. 502, 507, 139 L. Ed. 2d 471 (1997).

430-431, and n.33, 96 S.Ct. at 995, and n.33 (cited in <u>Burns</u>, 500 U.S. at 491, 111 S. Ct. at 1942). However, a prosecutor does not have absolute immunity when performing the traditionally investigative functions of law enforcement. *See* <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 276, 113 S. Ct. 2606, 2617, 125 L. Ed. 2d 209 (1993) (considering whether prosecutors actions in determining whether bootprint at scene of crime was that of suspect was an investigatory, administrative, or prosecutorial function, and holding that "[w]hen the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.");[8] *see also* <u>Rivera v. Leal</u>, 359 F.3d 1350, 1354 (11th Cir. 2004) (holding that prosecutor was functioning as an advocate for the State and not as an investigator and, thus, had absolute immunity). Thus, a prosecutor does not have absolute immunity for "authorizing a warrantless wiretap," *see* <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 520, 105 S. Ct. 2806, 2812, 86 L. Ed. 2d 411 (1985) (concluding "that the Attorney General is not absolutely immune from suit for damages arising out of his allegedly unconstitutional conduct in performing his national security functions."), or providing "legal advice to the police" during their pretrial investigation. <u>Burns</u>, 500 U.S. at 496, 111 S. Ct. at 1944.

Construed liberally, Mr. Cotterman has alleged that Mr. Miller was directing jail officials (law enforcement officers) to seize his property without a warrant. That is

---

[8] "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." <u>Buckley</u>, 509 U.S. at 276, 113 S. Ct. at 2617.

*generally* an investigative function and not a prosecutorial function. *See* Buckley, 509

U.S. at 274, 113 S. Ct. at 2616 (stating "if a prosecutor plans and executes a raid on a

suspected weapons cache, he 'has no greater claim to complete immunity than

activities of police officers allegedly acting under his direction.'") (quoting Hampton v.

Chicago, 484 F.2d 602, 608-09 (7th Cir. 1973), *cert. denied*, 94 S.Ct. 1414 (1974)).

Some limited types of investigations may be deemed to be a prosecutorial function.

*See* Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) (obtaining and examining

"information that was readily available to anyone")(citing Buckley, 509 U.S. at 273, 113

S.Ct. at 2616) (stating "[t]here is a difference between the advocate's role in evaluating

evidence ... as he prepares for trial ... and the detective's role in searching for the clues

... that might give him probable cause to recommend that a suspect be arrested.").

Here, it appears that Mr. Miller was directing an investigation to search for clues or

evidence. Mr. Miller has not met his burden of showing that absolute prosecutorial

immunity is justified. *See* Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). At

this stage of the litigation, Mr. Miller's motion to dismiss based on absolute immunity

should be denied.[9]

---

[9] "[W]ithout the benefit of a fully developed record, it is not possible to discern at this time whether the 'investigative process' the Plaintiffs complain of consisted of the 'factual investigation necessary to prepare a case,' or the investigation functions normally performed by a police officer prior to arrest." Cyber Zone E-Cafe, Inc. v. King, 782 F. Supp. 2d 1331, 1339 (M.D. Fla. 2011) (denying motion to dismiss based on absolute prosecutorial immunity). *See* Mitchell v. Turgeon, No. 1:CV-12-0028, 2012 WL 580189, at *6 (M.D. Pa. Jan. 17, 2012) report and recommendation adopted, No. 1:12:-CV-00028, 2012 WL 580181 (M.D. Pa. Feb. 22, 2012) (finding the assistant district attorney's "alleged actions regarding the search and seizure of Plaintiff's legal documents during a pre-trial hearing, at the direction and authority of Defendant Judge Turgeon . . . appear[ed] to be closely tied to the judicial phase of the criminal

**c.    Qualified Immunity**

Mr. Miller asserts that the only claim against him, that he "instructed officers to search his jail cell," is "not violative of a protected right."  Doc. 60 at 3.  On that basis, he asserts that he is entitled to qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Reichle v. Howards, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (quoted in Taylor v. Barkes, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015)).  "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Reichle, 132 S.Ct. at 2093 (brackets and internal quotation marks omitted) (quoted in Taylor, 135 S. Ct. at 2044).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)).  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'"  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (quoted in Pearson, 555 U.S. at 231, 129 S. Ct. at 815).

---

proceedings pending against Plaintiff in Dauphin County as to render him absolutely immune from Plaintiff's request for money damages.").

There are two issues relevant to a qualified immunity analysis: whether a plaintiff has alleged a deprivation of a constitutional right and whether the right was clearly established. Pearson, 555 U.S. at 232, 129 S. Ct. at 81; *see also* Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Mr. Miller contends that the Fourth Amendment's proscription against unreasonable searches does not apply to prison cells and, thus, the complaint fails to state a claim.[10] Doc. 60 at 4-5.

It is true that imprisonment necessarily curtails the enjoyment of many significant constitutional rights as institutional security needs must be balanced with retained rights. Bell v. Wolfish, 441 U.S. 520, 545-46, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979); Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."). Prisoners retain those rights that are "not inconsistent with [their] status as ... prisoner[s] or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (quoted in Hudson v. Palmer, 468 U.S. 517, 523, 104 S. Ct. 3194, 3198, 82 L.

---

[10] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (internal quotations omitted) (quoted in Hyland v. Kolhage, 158 F. App'x 194, 196 (11th Cir. 2005)). Although Mr. Cotterman only specifically raised First, Fifth, Eighth, and Fourteenth Amendment claims in count two of his complaint, doc. 38 at 10, a liberal reading of the statement of facts demonstrates a plausible Fourth Amendment claim as well. Mr. Miller properly addressed the Fourth Amendment claim in the motion to dismiss. Doc. 60.

Ed. 2d 393 (1984)).  "This principle applies equally to pretrial detainees and convicted

prisoners.  A detainee simply does not possess the full range of freedoms of an

unincarcerated individual."  Wolfish, 441 U.S. at 546, 99 S. Ct. at 1878.

In Hudson v. Palmer, the Court held that society was "not prepared to recognize

as legitimate any subjective expectation of privacy that a prisoner might have in his

prison cell and that, accordingly, the Fourth Amendment proscription against

unreasonable searches [did] not apply within the confines of the prison cell."  468 U.S.

at 526, 104 S. Ct. at 3200.  "The recognition of privacy rights for prisoners in their

individual cells simply cannot be reconciled with the concept of incarceration and the

needs and objectives of penal institutions."  *Id.*  That holding was premised on the

balancing of two competing interests: "the interest of society in the security of its penal

institutions and the interest of the prisoner in privacy within his cell."  *Id.* at  527, 104 S.

Ct. at 3201.  The Court concluded: "We are satisfied that society would insist that the

prisoner's expectation of privacy always yield to what must be considered the

paramount interest in institutional security."  *Id.* at 528, 104 S. Ct. at 3201.

This Fourth Amendment[11] analysis is rooted in the underlying penological

purpose of maintaining safe and secure prisons and jails.  In that context, cell searches

---

[11] "The Fourth Amendment protects '[t]he right of the people to be secure in their
persons, houses, papers, and effects, against unreasonable searches and seizures.'"
"It further provides that 'no Warrants shall issue, but upon probable cause.'" City of Los
Angeles, Calif. v. Patel, 135 S. Ct. 2443, 2451-52, 192 L. Ed. 2d 435 (2015).  Searches
without a warrant are deemed "reasonable" only in limited circumstances when "special
needs ... make the warrant and probable-cause requirement impracticable," and where
the "primary purpose" of the searches is "[d]istinguishable from the general interest in
crime control."  Patel, 135 S. Ct. at 2452 (internal quotations and citations omitted).

are deemed reasonable, "valid and necessary to ensure the security of the institution

and the safety of inmates and all others within its boundaries." 468 U.S. at 529, 104 S.

Ct. at 3201. A prisoner or jail detainee's rights are necessarily limited because of the

overriding need to safeguard jails and prisons from contraband, weapons, and the like.

It is more problematic when a search, such as this one, is unrelated to jail safety.

Accepting the allegations of a complaint as true, which the Court must do in ruling on a

motion to dismiss, this search was undertaken because Mr. Miller directed jail officials to

go "to Plaintiffs confinement cell and take all Plaintiffs legal materials, all Plaintiffs mail .

. . make copies and give the copies to" him. Doc. 38 at 10.[12] In other words, it was a

search conducted for purposes unrelated to penological issues and, instead, to search

for evidence.[13]

The Second Circuit Court of Appeals considered a similar Fourth Amendment

claim in Willis v. Artuz, 301 F.3d 65, 66 (2d Cir. 2002). In that case, a prisoner alleged

in a § 1983 complaint that prison officials conducted a warrantless search of his prison

---

[12] Mr. Cotterman suggests that Mr. Miller should have obtained a warrant to go through his legal material. Id. (citing State v. Carter, 322 N.C. 709, 370 S.E.2d 553, 561 (1988)). That case held that "the taking of a blood sample without consent violate[d] [the North Carolina] constitution unless done pursuant to a valid search warrant or upon probable cause and under exigent circumstances." Carter, 322 N.C. at 723-24, 370 S.E.2d at 561-62. That case is not helpful to Mr. Cotterman, however, because it is not on point and, moreover, was not based on the federal Constitution but a state Constitution.

[13] The search was conducted on September 11, 2014. Doc. 38 at 10. Mr. Cotterman provided an exhibit in this case which demonstrates that his criminal trial had been scheduled for September 17, 2014. See doc. 64-1 at 76-77; doc. 11 at 61. In response to the motion to dismiss, Mr. Cotterman contends that Mr. Miller obtained copies of his legal materials "on 9-11-14 in the middle of trial." Id. at 1. Mr. Cotterman indicates the presiding judge declared a mistrial on September 15, 2014. Id. at 1-2.

cell "at the behest of the police, who were seeking evidence of an uncharged crime . . . ." Willis, 301 F.3d at 66. The search "did not serve any purpose related to prison security." *Id.* The Second Circuit concluded that under Hudson, the prisoner-plaintiff had no expectation of privacy. *Id.* at 69 (stating "[o]ne of the incidents of confinement for a convict is the loss of privacy, which serves the legitimate purpose of retribution as well as the institutional security needs of the prison system."). Yet in so holding, the court distinguished the facts from an earlier case, United States v. Cohen, 796 F.2d 20 (2d Cir.), *cert. denied*, 107 S.Ct. 189 (1986), declining "to extend to convicted prisoners the privacy right secured to pre-trial detainees in Cohen." 301 F.3d at 68. Cohen, thus, stands for the proposition that "a pre-trial detainee does retain Fourth Amendment protection against searches 'at the instigation of non-prison officials for non-institutional security related reasons.'" Willis, 301 F.3d at 68 (quoting Cohen, 796 F.2d at 24); *see* United States v. Hogan, 539 F.3d 916, 923-24 (8th Cir. 2008) (concluding that defendant had "no legitimate expectation of privacy to the papers in his cell" and not adopting a limited exception for pretrial detainees because "the search of Hogan's cell was instigated by jail officials for security reasons and was not intended solely to bolster the prosecution's case.").

In Cohen, the defendant was unable to post bond and was held in custody pending trial. 796 F.2d at 21. An Assistant United States Attorney "directed MCC prison authorities to enter Barr's cell 'to look for certain types of documents that may have contained the names and phone numbers of other of Barr's co-conspirators and witnesses who Barr had already contacted and was still in the process of trying to

contact.'" *Id.* at 21.[14]  After surveying Supreme Court prison cases,[15] the Second Circuit

concluded in <u>Cohen</u> that the rule which had emerged was "that when a prison restriction

infringes upon a specific constitutional guarantee, it should be evaluated in light of

institutional security." *Id.* at 22.  The <u>Cohen</u> court rejected the government's argument

"that a pre-trial detainee retains no Fourth Amendment rights, regardless of the

circumstances underlying the search." *Id.* at 23.

> The Supreme Court in Hudson did not contemplate a cell search intended solely to bolster the prosecution's case against a pre-trial detainee awaiting his day in court; it did not have before it the issue of whether such a search could lawfully be used by government prosecutors to uncover information that would aid them in laying additional indictments against a detainee. . . .

> The door on prisoner's rights against unreasonable searches has not been slammed shut and locked. We take seriously the Court's statement that no iron curtain separates prisoners from the Constitution, and that the loss of such rights is occasioned only by the legitimate needs of institutional security. The emphasis on the need to accommodate individual rights to what is recognized as legitimate penological objectives is the dominant

---

[14] Based on that search, a search warrant was issued the next day authorizing the seizure of all "written, non-legal materials." *Id.*  Pursuant to the warrant, jail officials seized "numerous sheets of paper from Barr's cell which included witness lists, notes on specific charges, personal matters, notes on conversations between Barr and his attorneys, and a sheet of paper on which the government contended Barr was practicing to disguise his handwriting." *Id.*  Some materials were suppressed on Sixth Amendment grounds, but "the trial court refused to suppress the remaining papers or to declare the search unlawful on Fourth Amendment grounds." *Id.*

[15] In addition to <u>Hudson</u>, the cases reviewed included <u>Price v. Johnston</u>, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (noting lawful imprisonment necessarily entails a restriction or withdrawal of constitutional rights); <u>Pell v. Procunier</u>, 417 U.S. 817, 826, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974) (institutional security and legitimate objectives of the correctional system require limitations on prisoner rights); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (no wall separates the constitution from prison inmates), and <u>Bell v. Wolfish</u>, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).  <u>Cohen</u>, 796 F.2d 22-23.

theme throughout the Supreme Court's writing on this subject. From this it is patent that since no wall of steel and stone separates prisoners from the Constitution, prisoners' rights continue to exist. It is the scope of these rights that is necessarily limited by the broad authority prison officials must have to ensure institutional security; obviously the creation of a limitation or condition on the exercise of constitutional rights is essential to orderly prison administration. Yet, because conditioning the exercise of such rights rests on the twin-rationale of objective administrators insuring prison security, a limitation imposed on prisoners' constitutional rights cannot stand when the objectives the rationale serves are absent. Nor may federal courts charged with the duty to protect the rights of all citizens fulfill that obligation merely by paying lip-service to this concept.

Cohen, 796 F.2d at 23-24 (reversing district court's refusal to suppress all of the evidence); see also State v. Henderson, 271 Ga. 264, 266, 517 S.E.2d 61, 63 (1999) (concluding "that the United States Supreme Court in Hudson did not deprive pre-trial detainees of all Fourth Amendment protections.");[16] United States v. Hogan, 539 F.3d 916, 923 (8th Cir. 2008) (stating that "[e]ven if this court were to adopt [the Cohen] limited exception, it does not apply here, as the search of Hogan's cell was instigated by jail officials for security reasons and was not intended solely to bolster the prosecution's case."); United States v. Reece, 28 F.3d 114 (10th Cir. 1994) (stating that "[b]ecause Mr. Reece is not a pretrial detainee, he is not entitled to [the Cohen] exception on this basis"); United States v. Colbert, No. CRIM. 89-310, 1990 WL 5200, at *3 (D.N.J. Jan. 23, 1990) (concluding that warrantless search of pretrial detainee's cell that was

---

[16] The Georgia Supreme Court held "that where the search of a pre-trial detainee's cell is instigated or conducted by representatives of the prosecution solely for the purpose of uncovering incriminating evidence which could be used against the detainee at trial, rather than out of concern for any of the legitimate prison objectives identified by the Hudson Court, 468 U.S. at 526-527, 104 S.Ct. 3194, the pre-trial detainee retains a limited but legitimate expectation of privacy that he would be protected in such circumstances from an unreasonable search under the Fourth Amendment." Henderson, 271 Ga. at 267, 517 S.E.2d at 64.

initiated by Postal Inspectors did not meet the Cohen exception because it was undertaken "to further legitimate objectives of the jail"); Reid-Douglas v. Harding, No. 1:10-CV-2049, 2014 WL 3507292, at *7-9 (M.D. Pa. July 14, 2014) (affirming validity of Fourth Amendment claim for cell search of pretrial detainee, but granting qualified immunity because there that constitutional right was not clearly established at the time of the search).

The Eleventh Circuit has not yet expressed an "opinion as to the validity of the Cohen exception . . . ." Ford v. Hunter, 534 F. App'x 821, 826 (11th Cir. 2013) (noting there were no facts in the complaint suggesting "the prosecutor was responsible" for opening the pretrial detainee's "legal mail.").[17] There is, however, a Florida decision on point.

In McCoy v. State, 639 So. 2d 163, 163 (Fla. Dist. Ct. App. 1994), a direct criminal appeal, the Florida First District Court of Appeal held that the challenged search and seizure "violated Fourth Amendment rights retained by appellant notwithstanding his status as a pretrial detainee." McCoy, 639 So. 2d at 163 (reversing the conviction and remanding for new trial).

> Literally on the eve of the scheduled trial date, the assistant state attorney assigned to the case and a Jacksonville police officer acting under the former's direction went to appellant's cell at the local pretrial detention facility. There, pursuant to instructions from the assistant state attorney, the officer first removed appellant and his cellmate, and then conducted a

---

[17] In finding insufficient facts to address the "Cohen exception," the Court stated: "Despite no other circuit adopting Cohen's rule, Plaintiff argues we should both adopt the Cohen rule and reverse the district court for failing to sua sponte grant Plaintiff an opportunity to amend his complaint and add a Cohen claim." Ford, 534 F. App'x at 826.

search of the cell, looking for writings authored by appellant which might
contain incriminating statements.

McCoy, 639 So. 2d at 164.  "It was conceded that no probable cause existed for the

search, and that the sole purpose of the search had been to try to find incriminating

statements made by appellant."  639 So. 2d at 164.

During argument directed to the motion [to suppress], the assistant state
attorney conceded, further, that the search had been carried out on his
order, and that it had nothing whatsoever to do with any security concern
related to the detention facility; rather, the search had been motivated
exclusively by the hope that incriminating statements might be found. The
assistant state attorney argued that the search and resulting seizure were
not improper because, having been incarcerated pending trial, appellant
was entitled to no protection under the Fourth Amendment.

Id.  The trial court denied the motion to suppress.  Id.  The First District Court of Appeal

reversed the conviction, concluding "that appellant had a legitimate expectation that he

would be protected from such a search under the Fourth Amendment; that the search

was unreasonable; and that, therefore, the Fourth Amendment was violated."  Id. at

167.  The court reasoned that Hudson was "distinguishable" and was not intended "to

apply to situations such as that presented by the facts of this case."  Id. at 164-165.

The Court did not, in Hudson, state that its holding applied to pretrial
detainees, as well as to convicted inmates. This is of some importance
because it cited with approval its decision some five years earlier in Bell v.
Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which it
had assumed for purposes of argument (but found it unnecessary to
decide) that, while necessarily diminished because of the responsibility of
administrators effectively to manage detention facilities to ensure security
and order, pretrial detainees continued to retain some expectation of
privacy. Also of note in this regard is the Court's decision, announced on

the same day as that in <u>Hudson</u>, in <u>Block v. Rutherford</u>, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).[18]

<u>McCoy</u>, 639 So. 2d at 165. The court concluded that <u>Hudson</u> was not intended "to extend to searches such as that conducted in this case, which are not initiated by institutional personnel and are not even colorably motivated by concerns about institutional security." *Id.* at 166. In reaching that conclusion, the court found <u>Cohen</u> persuasive, pointing out that the search was initiated by the prosecution and not by jail authorities, it was not motivated by security concerns, and that Fourth Amendment rights should "be forfeited only in favor of 'the legitimate needs of institutional security.'" 639 So. 2d at 166 (quoting <u>Cohen</u>, 796 F.2d at 23).

Only one decision from the Florida Supreme Court has addressed <u>Cohen</u>. In <u>Bolin v. State</u>, 117 So. 3d 728, 737 (Fla.), reh'g denied, (June 27, 2013), *cert. denied*, 187 L. Ed. 2d 561 (2013), the Court dismissed a challenge to a search of a jail cell in which a letter was seized and introduced as evidence at trial over defense objection.[19]

---

[18] Both <u>Block</u> and <u>Hudson</u> were decided on July 3, 1984. The issue in <u>Block</u> was "whether pretrial detainees have a right guaranteed by the United States Constitution to contact visits and to observe shakedown searches of their cells by prison officials." <u>Block</u>, 468 U.S. at 577, 104 S. Ct. at 3228. Noting that the "principles articulated in <u>Wolfish</u> govern[ed] resolution of" the issues in <u>Block</u>, the Court held that the searches were "reasonable responses . . . to legitimate security concerns." <u>Wolfish</u>, 441 U.S. at 561, 99 S.Ct. at 1886 (quoted in <u>Block</u>, 468 U.S. at 591, 104 S. Ct. at 3235) (reiterating that courts must give deference to the informed discretion of the institutional officials)).

[19] "Prior to Bolin's first retrial, Bolin moved for the suicide letter to be suppressed." <u>Bolin</u>, 117 So. 3d at 734, n.1. The trial court granted the motion to suppress, but the Second District Court of Appeal reversed that ruling on interlocutory appeal. <u>State v. Bolin</u>, 693 So.2d 583 (Fla. 2d DCA 1997) (cited in 117 So. 3d at 734, n.1). The "district court held that based on the factual circumstances, Bolin did not have a reasonable expectation to privacy in the letter." 117 So. 3d at 734, n.1. The Florida Supreme Court "declined to grant discretionary review of the district court's decision," <u>Bolin v. State</u>, 697

Bolin claimed "the search was conducted merely to bolster the State's case against" him and "was not conducted for security reasons." Bolin, 117 So. 3d at 737. After citing to Cohen, 796 F.2d at 23, the Court held that "[t]he record conclusively refute[d] [that] allegation." First, the Court found that Bolin was not "merely a pretrial detainee" but while "awaiting trial on the instant murder charge, he was serving two consecutive sentences" for rape and kidnapping. 117 So. 3d at 737 (citing Hudson and noting that because of "the circumstances under which Bolin was monitored, the daily searches of his cell, and his suicide attempt, there was no reasonable expectation of privacy within Bolin's prison cell which would trigger the Fourth Amendment protections against this action."). Second, the "search[20] and seizure of the letter in question" were carried out after an attempted suicide. Thus, the search was pursuant to a policy to investigate "where serious injury occurred." Id. "The letter was placed in a prominent position on top of Bolin's box of personal possessions, face up, addressed to Captain Terry, and stamped." Id. "The letter was seized and read after Bolin attempted suicide because it

---

So.2d 1215 (Fla. 1997) (table decision), and the United States Supreme Court denied Bolin's petition for a writ of certiorari. Bolin v. Florida, 118 S.Ct. 427 (1997) (table decision). 117 So. 3d at 734, n.1.

[20] The search occurred after Bolin attempted suicide and was taken to the hospital. Bolin, 117 So. 3d at 731.

The chief investigator, Captain Gary Terry, entered Bolin's cell and saw a cardboard box sitting on the commode. A stamped envelope addressed to Captain Terry was on top of the box. Captain Terry opened the envelope and read the letter, which discussed, among other things, the murder investigation.

117 So. 3d at 731-32.

appeared to be, and was indeed, a suicide note." *Id.* Thus, the <u>Bolin</u> case does not

have facts materially on point because a pretrial detainee's property was not seized by

jail officials at the urging of the prosecutor.

Both <u>McCoy</u> and <u>Cohen</u> are persuasive. <u>Hudson</u>, <u>Wolfish</u>, and <u>Wolff</u> are based

on the premise that prisoners and pretrial detainees retain those rights not inconsistent

with their incarceration. The significance of jail and prison security concerns override

and, thus, make inconsistent some otherwise valid constitutional rights. Yet a pretrial

detainee has not forfeited all constitutional rights. A detainee is held "to ensure his

presence at trial" and the Government "may subject him to the restrictions and

conditions of the detention facility so long as those conditions and restrictions do not

amount to punishment, or otherwise violate the Constitution." <u>Wolfish</u>, 441 U.S. 520,

536 37, 99 S. Ct. 1861, 1872 73, 60 L. Ed. 2d 447 (1979). Absent a valid security

concern, a pretrial detainee's constitutional rights remain in place.

A prosecutor could not direct law enforcement to search an individual's property

in his car or office cubicle absent a warrant or recognized exception to the Fourth

Amendment. *See* <u>Mancusi v. DeForte</u>, 392 U.S. 364, 372, 88 S. Ct. 2120, 2125, 20 L.

Ed. 2d 1154 (1968) (holding "the search of DeForte's office was 'unreasonable' within

the meaning of the Fourth Amendment."); <u>United States v. Ross</u>, 456 U.S. 798, 799,

102 S.Ct. 2157, 2160, 72 L.Ed.2d 572 (1982). Similarly, a prosecutor cannot bypass

the warrant requirement by using correctional officers at a jail to search a detainee's

property, make copies of that property, and turn it over to the prosecutor. Such a

search is unreasonable under the Fourth Amendment. Mr. Miller's argument that the

Fourth Amendment's proscription against unreasonable searches does not apply to a

jail cell, doc. 60 at 4-5, should be rejected in light of the facts alleged.  Conducting a

search of Mr. Cotterman's cell unrelated to jail security, seizing documents and

providing copies of those documents to the prosecutor was a violation of Mr.

Cotterman's Fourth Amendment rights.

Having concluded that Mr. Cotterman's rights were violated, it remains to be

determined whether the constitutional right was clearly established at the time of the

challenged conduct such that Mr. Miller was on notice that his actions were

unconstitutional.  Taylor, 135 S. Ct. at 2044.  A "government official can be put on notice

that his actions will violate a constitutional or statutory right by ... a legal principle

announced by a decision from a court with jurisdiction over the place where the violation

of rights was committed."  Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1237 (11th

Cir. 2010) (citing Danley v. Allen, 540 F.3d 1298, 1313 (11th Cir. 2008)).   To be "clearly

established" for qualified immunity purposes, "existing precedent must have placed the

statutory or constitutional question beyond debate."  Ashcroft v. al-Kidd, 563 U.S. 731,

131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (quoted in Taylor, 135 S. Ct. at 2044).

Moreover, for the right to be "clearly established," it must come from precedent of the

United States Supreme Court, the Eleventh Circuit Court or Appeals, or the "highest

court of the relevant state in interpreting and applying the law in similar circumstances."

Festa v. Santa Rosa Cnty. Florida, 413 F. App'x 182, 185 (11th Cir. 2011) (citing

Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997)

(stating "[i]n this circuit, the law can be 'clearly established' for qualified immunity

purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.")).  The Fourth Amendment right of a pretrial detainee to be from a search and seizure unrelated to jail security and intended to obtain evidence to use against him has not been clearly established.  The motion to dismiss the Fourth Amendment claim on the basis of qualified immunity should be granted.

Notwithstanding, Mr. Cotterman also asserted that his First, Fifth, Eighth, and Fourteenth Amendment rights were violated by Mr. Miller.  Doc. 38 at 6.  To the degree Mr. Cotterman also asserts a Fifth and Eighth Amendment violation premised on these facts, those claims should be dismissed.  Mr. Cotterman is a pretrial detainee and not a convicted prisoner so the Eighth Amendment is not implicated.  Keith v. DeKalb Cnty., Georgia, 749 F.3d 1034, 1053, n.44 (11th Cir. 2014) (citing Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) and noting that "pretrial detainees are protected by Fourteenth Amendment's Due Process Clause, not the Eighth Amendment.").  The Fifth Amendment due process claim "applies only to federal actors," Kingsley v. Hendrickson, 135 S. Ct. 2466, 2477, 192 L. Ed. 2d 416 (2015) (Scalia, J., dissenting), and, moreover, is merely duplicative of the Fourteenth Amendment claim.

Mr. Cotterman's Fourteenth Amendment due process claim is insufficient because he has not alleged any harm as a result of the order to search his property.  Mr. Cotterman alleged he was deprived of his property on September 11, 2014, but Mr. Miller was ordered to return the property on September 5, 2014.  Doc. 38 at 10-11.

Mr. Cotterman has not alleged how he was harmed by that short deprivation. Moreover,

a "claim for deprivation of his property does not amount to a violation of due process

under the United States Constitution provided that the following two circumstances are

present: (1) the deprivation of property resulted from an intentional, non-negligent act of

a state employee that is random and unauthorized, rather than pursuant to an

established state procedure; and (2) the state provides an adequate post-deprivation

property remedy for the prisoner's property loss." Cooler v. Escambia Cnty. Det.

Facilities, No. 3:07CV188/RV/MD, 2007 WL 3072418, at *5 (N.D. Fla. Oct. 22, 2007)

(citing Hudson, 468 U.S. at 533, 104 S.Ct. 3194, and Parratt v. Taylor, 451 U.S. 527,

543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). The allegations reveal this was an

intentional act and the State of Florida provides a remedy for property loss. This claim

must be dismissed.

Mr. Cotterman's final claim against Mr. Miller is the First Amendment claim. One

protection of the First Amendment guarantees the freedom of speech. U.S. Const.

amend. I, XIV. "[M]ail is a medium of free speech, 'and the right to send and receive

mail exists under the First Amendment.'" Al–Amin v. Smith, 511 F.3d 1317, 1333 (11th

Cir. 2008) (quoted in Ford, 534 F. App'x at 824). It has been well established that

opening and reading a detainee or prisoner's legal mail outside his presence is a

violation of the First Amendment. See Ford, 534 F. App'x at 824 (concluding the pretrial

detainee stated a First Amendment claim when two letters were opened and read

outside his presence). In this case, not only did Mr. Cotterman allege his legal mail was

opened, but it was copied and given to Mr. Miller. Qualified immunity should be denied on this claim.

To the degree Mr. Cotterman also raises a First Amendment denial of access to the courts claim, it is insufficient. In presenting such a claim, Mr. Cotterman must also allege "actual injury." Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996). In addition, "[t]he injury which the inmate must demonstrate is an injury to the right asserted, i.e. the right of access." Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998). The conduct complained of must have frustrated or impeded the inmate's efforts to pursue a nonfrivolous legal claim, and the legal claim must be attacking the prisoner's sentence, directly or collaterally, or challenging the conditions of his confinement. Lewis, 518 U.S. at 352-57, 116 S. Ct. at 2181-82; *see also* Bass, 143 F.3d at 1445. No such facts are alleged and this aspect of the First Amendment claim should be dismissed.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to dismiss, doc. 60, filed by Brian Miller be **GRANTED in part and DENIED in part**. The motion should be denied as to the First Amendment freedom of speech claim, but otherwise granted, and the official capacity claim against Defendant Miller must be limited to injunctive relief only.

It is also **RECOMMENDED** that Defendant Miller be required to submit a response to Plaintiff's fifth amended complaint, doc. 38, and this case be remanded for further proceedings.

      **IN CHAMBERS** at Tallahassee, Florida, on October 19, 2015.


      S/      Charles A. Stampelos
      **CHARLES A. STAMPELOS**
      **UNITED STATES MAGISTRATE JUDGE**



### NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**